ROBERTSON, STATE REVENUE AGENT, *v.* MONROE COUNTY.

[79 South. 187, In Banc.]

1. MUNICIPAL CORPORATIONS. *Suit by state revenue agent.*
   The state revenue agent is empowered under Code 1906, sections 4738-4739 (Hemingway's Code, sections 7056-7057) to sue a county for the use and benefit of a city.

2. EQUITY. *Multifariousness. Statute.*
   Under Code 1906, section 598 (Hemingway's Code, section 358), relating to the joinder of matters of equity, and multifariousness, a bill by the state revenue agent for the use of several cities against a county to recover a certain share of *ad valorem* taxes, the causes of action in each case growing out of the same act of the county, was not an improper joinder of causes of action and such a bill was not subject to demurrer for multifariousness.

3. MUNICIPAL CORPORATIONS. *Suit by revenue agent in name of city.*
   The fact that a city may prosecute a certain suit in its own name is no objection to a suit by the state revenue agent who is expressly authorized to bring such suit for the use of the city.

4. ABATEMENT AND REVIVAL. *Pendency of suit.*
   The various statutes of this state frequently confer power upon several different officers to bring the suit, and in such case the one first bringing the suit has the right to prosecute such

suit and if the second party should bring suit while the first is pending, the pendency of the first suit could be pleaded in answer to such second suit.

5. PLEADINGS. *Matters within knowledge of defendants.*

Where the state revenue agent in his bill charged that a county levied *ad valorem* taxes, that a city was entitled to one-half of it, and that the municipality worked its streets at the expense of the municipal treasury, such allegations were sufficient pleadings to charge a system of road working under which the county was operating, without specifying the particular sections or chapters under which it was operating, since the defendant county must know of necessity what system of road working was in force, and could not be prejudiced by the failure to allege specifically what appeared upon the public records of the county, to-wit, the minutes of the Board of Supervisors.

APPEAL from the chancery court of Monroe county. HON. A. J. McINTYRE, Chancellor.

Bill by Stokes V. Robertson, State Revenue Agent, for the use of Aberdeen and Amory, Mississippi, against Monroe County. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*D. W. Houston, Sr., & Jr.,* for appellant.

*Leftwich & Tubb,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The state revenue agent filed a bill in the chancery court of Monroe county, alleging that, in pursuance of the authority and duty of his office, he investigated the books and accounts and vouchers of Monroe county, and of the municipalities of Aberdeen and Amory, along the line of the collection and proper distribution of *ad valorem* road taxes and of *ad valorem* road maintenance fund taxes collected in the fiscal years of 1910 to 1915, both years inclusive, on and from prop-

erty within the limits of the said municipalities, which had been paid over into the treasury of said county; and that in the course of his investigations he found that there was a balance of about nine hundred forty dollars and sixty-two cents which was due to and should have been paid to the city of Aberdeen on account of *ad valorem* road taxes collected on property within the limits of the city for the years 1910, 1911, and 1912; and found also that two thousand, nine hundred seventy-two dollars and eighty-seven cents was due and should have been paid to the city of Aberdeen on account of *ad valorem* road maintenance fund taxes collected on property within the limits of said city of Aberdeen for the fiscal years 1912, 1913, 1914, and 1915; and also found that there was a balance of about five hundred seventy-five dollars and forty-three cents which should have been paid to the city of Amory on account of *ad valorem* road fund taxes collected on property within the limits of Amory during the fiscal years 1910, 1911, and 1912; and also that there was about eight hundred and ninety-nine dollars and fifty cents due the city of Amory on account of *ad valorem* road fund taxes collected on property within the limits of the city for the fiscal year 1913; and that there was about nine hundred thirty-five dollars and ninety-eight cents due and should have been paid to the city of Amory on occount of *ad valorem* taxes collected on property within the limits of the city for the fiscal year 1914; and that there was about nine hundred sixty-five dollars and eighty-nine cents which was due and should have been paid to the city of Amory on account of *ad valorem* road taxes on property within the limits of said city for the year 1915; and that there was about one thousand two hundred seventy-five dollars and forty-five cents due and should have been paid to the city of Amory on account of *ad valorem* road maintenance

fund collected on property in said city of Amory for the fiscal years 1912, 1913, 1914, and 1915; that the amounts claimed and made exhibits to the bill were filed with the board of supervisors of the county in October and November, 1916, and that each and all of said claims were rejected and disallowed before the institution of this suit. It is further charged that the county claims that it is entitled to credits on some or all of said claims for commissions for the collection of amounts, reduction in assessments, for insolvents, and for working the streets of said cities by convicts, as to which there is a dispute between the complainants and defendant, and that the complainant is not advised as to the sum so claimed, or as to the balance due by the said county, and cannot ascertain the same after diligent inquiry, and that a discovery is necessary from the county as to said several amounts, and that to ascertain the exact amount involves some intricate and complicated accounting. It is further alleged that the municipalities during said years worked the streets at the expense of the municipal treasuries, and was entitled to one-half of the *ad valorem* road taxes and *ad valorem* road maintenance fund collected on the property within the municipal limits. The county demurred to the bill on the ground, first, that there was no equity on the face of the bill; second, that the bill is multifarious, and that it seeks to join distinct and separate causes of action; and, third, that the revenue agent had no authority to bring suit; fourth, that if any cause of action exists in the cities of Aberdeen and Amory against Monroe county, that these municipalities themselves can and must prosecute their separate suits in their own name and right; fifth, that the bill is vague, indefinite, and uncertain, and that it fails to allege under what law or statute the *ad valorem* taxes were collected, and what law or statute vests in

said cities the right to any portion of such taxes. The demurrer was sustained by the chancellor, and, complainant not asking to amend, his bill was dismissed, from which judgment this appeal is prosecuted.

The power of the revenue agent to bring this suit is discussed in the preceding case of *Robertson, State Revenue Agent,* v. *Monroe County,* 79 So. 184, the only difference here being that the revenue agent is representing the cities of Aberdeen and Amory in a suit against the county. What was said in the other case would apply here, so far as the power of the revenue agent to bring suit is concerned. We think he has such power, and, inasmuch as the cities can sue the county, the revenue agent could represent them in bringing the suit under the terms of the statute. It is contended that the bill is multifarious, in that it seeks to join distinct and separate causes of action; that is, an action in favor of Aberdeen against the county, wholly disconnected with the right of the city of Amory against the same defendant. The theory of the bill is that the county had levied an *ad valorem* and road maintenance tax throughout the county, and that from this act of levying taxes upon the property of the county the said cities of Aberdeen and Amory were respectively entitled to one-half of the *ad valorem* funds collected within their respective limits. The cause of action in each of the plaintiffs grows out of the act of the county in collecting this money and paying it into the county treasury, and, while the portion which goes to the city of Aberdeen is not collected from the same property as that portion which is claimed on behalf of Amory, still it flows from the same act of the county, and the same funds collected by the county. Section 598, Code of 1906 (Hemingway's Code, section 358), on multifariousness, provides as follows:

"If a demurrer for multifariousness shall be sustained the court may authorize amendments by directing separate bills to be filed without new process as to the parties, before the court, and by addition of new parties, or otherwise, as may be necessary or proper for the attainment of justice; but the uniting in one bill of several distinct and unconnected matters of equity against the same defendants shall not be an objection to the bill."

These suits are both against the same defendant, and, while they are distinct suits, they are connected in such a way that we can see no prejudice flowing to the defendant from the filing of the bill as it is filed here. If the demurrer was sustained on this ground, the only effect would be to have the complainant to separate the bill into two bills, each of which would have to be answered, and there would be no new process, and we fail to see that any advantage would be gained in the administration of justice by requiring the bill to be separated. We are of the opinion that this case comes within the latter clause of the above statute, and it would not be an objection to the bill to have the same bill state a case for each of said municipalities. It is more in harmony with the spirit of the times, and especially in chancery court, to have the litigation speedily determined, and we think that the machinery of the chancery court is such that the rights of all parties can be administered under this bill without confusion or embarrassment to the defendant.

There is nothing in the contention that the city of Aberdeen and the city of Amory can and must prosecute separate suits in their own name and right. The revenue agent is expressly authorized to bring suit for them, and it is no objection that the city itself could bring the suit, or that even some other

officer could represent them in bringing suit. The various statutes of this state frequently confer power upon several different officers to bring the suit, and in such case the one first brining the suit has the right to prosecute such suit, and, if the second party should bring suit while the first is pending, the pendency of the first suit could be pleaded in answer to such second suit. This objection was pressed upon this court in the case of *Dukate* v. *Adams,* 101 Miss. 433, 58 So. 475. The court in that case (101 Miss. at page 439, 58 So. at page 477), responding to that contention, said:

"Counsel for appellants also contend that since section 5004, which imposes the penalty sued for, provides that it shall be recovered by an action in the name of the state at the relation of the attorney-general or district attorney, that the grant of power to sue to these officials excludes any power to sue therefor in any other officials, and that consequently the revenue agent is without authority to bring this suit. This section, however, and section 4738, are parts of the same Code, were adopted at the same time, and must be construed together, and, so construed, the authority granted to the attorney-general and district attorney by section 5004 is not exclusive. To so hold would practically strip the revenue agent of all power, for in very few, if any, cases is he given the sole authority to collect or sue for money owing the state, such authority being generally also vested in other officials."

Referring to the fifth ground of demurrer, we think that the allegations of the bill that the county levied the *ad valorem* taxes, and that the municipality was entitled to one-half of it, and that the municipality worked its streets at the expense of the municipal treasury, are sufficient pleadings to charge a system

of road working under which the county was operating, without specifying the particular sections or chapters under which it was so operating. It would be better pleading for the complainant to have stated specifically what road law had been adopted in Monroe county, as under section 85 of the Constitution the road law only becomes operative in a county on being adopted by an order entered upon the minutes of the board of supervisors. However, pleading are not required to set out all the details, and the matter will be determined on the introduction of the proof, and, if the minutes showed an adoption of a system under which no division was permitted, it would fail in its action. If it showed the adoption of a law by the county providing for a division of the *ad valorem* and maintainance taxes, the rights could be determined under such law. The defendant, the county, must know of necessity what system of road working was in force, and could not be prejudiced by the failure to allege specifically what appeared upon the public records of the county, to-wit, the minutes of the board of supervisors, which would be the only evidence of the law adopted, and from which the rights could be adjudicated by the court. If the county desires, it may plead or answer the bill setting up the system it was operating under, from which could be easily determined what the rights of the municipalities were. Again, the proper practice, if the defendant desired more specific information, was a motion to make the pleadings more certain by requiring information as to what statute the revenue agent was relying upon.

We think the chancellor erred in sustaining the demurrer, especially as it seems to have been principally upon the ground of the want of power in the revenue agent to bring the suit.

The judgment is reversed, with leave to the defendant to plead or answer within thirty days after mandate reaches the court below.

SMITH, C. J., and COOK, J., dissent.